Filed 8/18/16  P. v. Sosa CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ELIAS RAMIREZ SOSA,<br><br>    Defendant and Appellant. | 2d Crim. No. B266502<br>(Super. Ct. No. F487456)<br>(San Luis Obispo County) |

Appellant Elias Ramirez Sosa was convicted by jury of continuous sexual abuse, in violation of Penal Code section 288.5,[1] count 1, and child molestation, in violation of section 288, subdivision (a), counts 2 through 9.  Statute of limitations extension allegations (§ 803, subd. (i)) and multiple victim allegations (§ 667.61, subd. (e)(4)(5)) were found true.  Appellant was sentenced to a total term of 132 years to life in prison, comprised of the midterm of 12 years on count 1, and 15 years to life on counts 2 through 9, to run consecutively.  Appellant was credited with 961 days of precommitment confinement.

Appellant's convictions involve the molestation of four children over a period of 18 years.  Count 1 alleged violations occurring between 1994 and 1997 against J. Doe (J.); count 2 alleged a violation occurring between 1997 and 1999 against J.;

---

[1] All further statutory references are to the Penal Code.

counts 3 and 4 alleged violations occurring between 1999 and 2003 against D. Doe (D.); counts 5, 6, and 7 alleged violations occurring between 2002 and 2007 against R. Doe (R.); and counts 8 and 9 alleged violations occurring between 2006 and 2012 against I. Doe (I.).  All victims were under the age of 14 at the time of the offenses, and three are related to appellant.  Appellant's sole contention on appeal is that his convictions on counts 3 and 4 involving D. lack sufficient evidence.  We affirm.

FACTS

D. is appellant's granddaughter.  She and her immediate family lived with appellant when D. was in the second, third and fourth grades, and she visited his house frequently when she was five or six years old.  The family had various animals at the house.  When D. was five or six years old, she would regularly feed the animals with appellant.  During those feedings, appellant would pick her up and slowly rub or massage her vagina through her clothes.  He did so on multiple occasions.

D. became aware that the touchings were more than an accident or incidental when she was sleeping over at a friend's house and the friend recounted her own experience of being touched inappropriately by someone.  The friend did not believe D. would understand how she felt, but D. told her friend that she "'went through the same thing'" with her grandpa.  D., who was 15 or 16 at the time, did not tell her parents because she did not want to start "a family feud" or "have that side of the family disown us."

In April 2012, D.'s father told D. that appellant had sexually abused her cousin, I., and asked if it had also happened to her.  D. admitted that it had, prompting the family to contact the police.  Testifying as an adult at trial, D. stated she had no doubt that the inappropriate touchings had occurred and that they were not accidental.

At the time of trial, I. was 12 years old.  Appellant is her great-grandfather. I. visited her great-grandparents frequently.  When she was about six, appellant began to touch her inappropriately.  The first time, I. was watching television alone in the living room and appellant touched her "bottom."  He went inside her underpants and touched her vagina for "minutes."  When I.'s mother opened the door, appellant moved away.

2

Appellant touched I. more than twice in the same fashion, and told her to be quiet when doing so.  Appellant also put his tongue down her throat when he kissed her.  She was eight when this first happened, and the last incident took place when she was nine.  I. reported appellant to her school counselor in fifth grade.

J.'s first experience with appellant was similar to D.'s.  While living with her aunts, J. visited appellant almost daily because he and his wife babysat her.  When appellant helped her out of his truck after school, he would put his hand behind her "butt" and rub her vagina.  This occurred "often," when she was six or seven, although his hand never went beneath her clothing.

When J. was between the ages of seven and eleven, appellant forced her to touch his penis.  One morning, she woke up to find appellant on top of her.  Appellant lifted up her nightgown and tried to open J.'s legs.  He attempted to touch her with his penis.  She did not scream because she thought she would be accused of lying.  Another person came out of a room, causing appellant to leave.  The incident lasted five minutes.  The touchings stopped after J. moved away.

R., another one of appellant's grandchildren, experienced similar touchings.  They began in appellant's backyard when she was about six or seven years old.  Appellant rubbed R.'s vagina outside her clothing then put her hand on his penis, over his pants.  Appellant next directed R. inside, where he had her take down her pants.  He touched her vagina and had her touch his exposed penis.  Sometimes he had her orally copulate him.  This happened more than five times.  Appellant digitally penetrated R. more than once and unsuccessfully tried to engage in intercourse.  The incidents took place in the kitchen or living room and would end when appellant heard people walking in the house.  The behavior stopped when R. moved away at the age of nine or ten.

Appellant was 77 years old at the time of trial.  He testified that he did not molest any of the victims and that he does not know why they have accused him.

DISCUSSION

Appellant argues that sufficient evidence did not support the jury's finding that he violated section 288, subdivision (a) for lewd acts upon D.  In particular, appellant

3

claims the evidence fails to support a finding of sexual intent accompanying his physical contact with her. We disagree.

"A lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body. [Citation.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) "The crime is committed by any touching of a child with the requisite intent." (*People v. Gilbert* 1992) 5 Cal.App.4th 1372, 1380 (*Gilbert*).) The requisite intent is "the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of a perpetrator or victim. (§ 288, subd. (a).) Section 288 is violated by "a touching, even one *innocuous or inoffensive* on its face, done with lewd intent." (*People v. Lopez* (1998) 19 Cal.4th 282, 290.)

"'[T]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent.' [Citations.] Other relevant factors can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection. [Citation.]" (*People v. Martinez*, *supra*, 11 Cal.4th at p. 445.) "Criminal intent will rarely be shown by direct evidence and must frequently be inferred from a defendant's conduct." (*Gilbert*, *supra*, 5 Cal.App.4th at p.1380.)

Upon examining the entire record, we conclude that there is sufficient evidence of sexual intent. There is no question the charged acts involving D. were sexual in nature. D. testified that on multiple occasions, appellant picked her up, placed his hand on her vagina and slowly rubbed her genitals for several seconds. This evidence was sufficient to show the requisite intent. (See *People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1508 [testimony of one witness may be substantial evidence to support a verdict].)

Moreover, "[i]ntent may properly be inferred from evidence of other specific acts of a similar nature. [Citation.]" (*Gilbert*, *supra*, 5 Cal.App.4th at p. 1380.) In *Gilbert*, the court held that evidence of the defendant's sexual conduct with other

4

young girls was relevant to proving the defendant acted with lewd intent on the charged offense. (*Ibid.*)

Here, the jury could infer from appellant's continuing course of sexual conduct with the four victims that when he rubbed D.'s vagina, he did so with sexual intent. The evidence was overwhelming that he committed similar acts with the other three girls. For example, appellant touched I.'s bottom, and then touched her vagina for "minutes" before being interrupted by her mother. While helping J. out of his truck after school, appellant would place his hand behind her bottom and rub her vagina. He also rubbed R.'s vagina outside her clothing and then put her hand on his penis. These actions, along with the more serious conduct of engaging in sexual acts with the girls, particularly R., confirm that he acted with the requisite sexual intent when he rubbed D.'s vagina. (See § 288, subd. (a).) Appellant has not shown that the evidence was insufficient to prove counts 3 and 4.

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

5

Rita Coyne Federman, Judge

Superior Court County of San Luis Obispo

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.